UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| CHRISTOPHER CARTER | NO.: 17-00129-BAJ-RLB |

### RULING AND ORDER[1]

Before the Court is the **Motion to Suppress (Doc. 14)** filed by Defendant, Christopher Carter. Defendant seeks to suppress the evidence seized during warrantless searches that occurred on June 12, 2017. (*Id.* at ¶ 2). The United States of America ("the United States") filed an Opposition. (Doc. 24). On February 26, 2018, the Court held an evidentiary hearing on the motion, and permitted the simultaneous filing of post-hearing briefs on the issue of standing only. (*See* Docs. 32, 33). For the following reasons the **Motion to Suppress (Doc. 14)** is **DENIED**.

### I. BACKGROUND

On June 12, 2017, officers with the Baton Rouge City Police Department ("BRPD") effected a warrantless arrest of Defendant at his grandfather's residence located at 2908 Tecumseh Street in Baton Rouge, LA. (Doc. 14 at ¶ 2). At 10:35 p.m. on June 12, 2017, BRPD Officer J. Thomas ("Officer Thomas") along with Cpl. J.

---

[1] The subject of this Ruling and Order only pertains to whether Defendant has standing under the Fourth Amendment to challenge the seizure of the Glock 9mm pistol and ammunition seized from a silver 2007 Mercedes Benz C230.

Migues were dispatched to the 2900 block of Tecumseh Street pursuant to an anonymous complaint that a silver Mercedes Benz automobile had been involved in a shooting with a brown Chevrolet Trailblazer. (Doc. 14 at ¶ 3; Doc. 14-1 at p. 7). According to his report, Officer Thomas made contact with the anonymous complainant "on the corner of Hiawatha and Tecumseh" at approximately 10:40 p.m., at which time the anonymous complainant advised that the residents of 2908 Tecumseh were involved in the shooting. (*Id.* at ¶ 4; *Id.* at ¶ 2). According to his report, while speaking with the complainant, Officer Thomas observed a silver Mercedes pull into the driveway of 2908 Tecumseh, with several subjects exiting the vehicle and entering the residence. (*Id.*). During the hearing, Officer Thomas testified that he could not identify all of the occupants of the vehicle except for the Defendant, who had obvious neck tattoos, and stood out by walking slowly from the vehicle, rather than scurrying quickly like the other occupants. (Doc. 33 at p. 5). Officer Thomas further testified that he observed Defendant stepping out of the front right passenger door. (*Id.*). Officer Thomas then called for other officers to assist him. (Doc. 14 at ¶ 4).

After Officer Thomas called for assistance, he approached the residence "to investigate the scene." (*Id.* at ¶ 5). As Officer Thomas approached the front door, he allegedly observed spent shell casings on the ground. (*Id.*). Defendant's grandfather, who was the owner of the residence and the silver Mercedes Benz automobile, Mr. Claudius Price ("Price"), exited the front door, at which time Officer Thomas ordered Price and "the rest of the subjects inside the residence to stay inside." (*Id.*). All occupants of the residence complied. (*Id.*).

Officer Thomas reported that he then "checked the 2007 Mercedes Benz," which he noted was unlocked, "for evidence relative to the shooting." (*Id.* at ¶ 6). While "checking" the Mercedes Benz automobile, Officer Thomas claimed to have observed, in "plain view," a silver firearm "placed in between the driver seat and the center console."[2] (*Id.* at ¶ 6; Doc. 14-1 at ¶ 5). Officer Thomas removed the firearm from the vehicle and began running a weapons check on the firearm. (*Id.*; Doc. 14-1 at p. 8). While running the weapons check, Officer Thomas instructed Corporal Daniels ("Cpl. Daniels"), who had arrived on scene, to further search the vehicle for additional evidence, at which time Cpl. Daniels allegedly located a second firearm, that is, the subject firearm—a Glock, Model 26, 9mm caliber, semi-automatic pistol, bearing serial number YHY921, and ammunition, that is, 28 rounds of WIN 9mm (not fully loaded with bullets)—beneath the front passenger seat. (*Id.* at ¶ 7; Doc. 14-1 at ¶ 1).

Officer Thomas then searched the vehicle a third time. (Doc. 14 at ¶ 8). During this third search, Officer Thomas claimed to have found Defendant's identification card in the glove compartment on the passenger side of the vehicle. (*Id.*). A criminal records check revealed that Defendant had a prior felony conviction for Simple Robbery in 2013. (*Id.*). Defendant was thereafter promptly arrested, without a warrant, on the instant charge. (*Id.*).

---

[2] This firearm is identified in Officer Thomas' police report as a "Silver Smith and Wesson .357 Magnum (s#145X9)," but is not described in the Indictment against Defendant. (Doc. 14-1 at p. 7) (*see also* Doc. 1).

On September 28, 2017, Defendant was charged by the grand jury with possession of a weapon and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). On October 25, 2017, Defendant filed the instant Motion to Suppress Evidence with Supporting Memorandum and Request for Evidentiary Hearing. (Doc. 14). On December 18, 2017, the United States filed the first of two motions to continue (Docs. 18, 20) as well as a response to Defendant's motion to suppress on February 21, 2018. (Doc. 24). On February 26, 2018, the Court held an evidentiary hearing addressing whether Defendant has standing to challenge the warrantless search of the Mercedes Benz automobile owned and registered to Price, the Defendant's grandfather.

## II. DISCUSSION

It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). However, in cases where a search is not conducted pursuant to a warrant, the Government bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365,

4

368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.6 (5th Cir. 1999)).

Nonetheless, standing is a central component of Fourth Amendment jurisprudence. *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Id.*; *see also Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Brown v. United States*, 411 U.S. 223, 230 (1973)) (citations omitted). Therefore, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

### A. STANDING

The United States argues that the Court should deny Defendant's motion to suppress on the grounds that Defendant lacks standing under the Fourth Amendment to challenge the seizure of the Glock 9mm pistol and ammunition seized from the 2007 Mercedes Benz automobile in which he was merely a passenger. (Doc. 33 at p. 1). Defendant contends that he had a reasonable expectation of privacy in his grandfather's vehicle because he was free to use the vehicle any time he wanted and he kept personal property (*i.e.* his identification card) in the vehicle. (Doc. 32 at p. 4).

The Supreme Court has established a two-pronged test for determining whether a defendant has standing to bring a Fourth Amendment challenge to an allegedly illegal search: "Such a determination depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the

place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as [objectively] reasonable."[3] *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996) (quoting *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037–38 & n. 5 (5th Cir.1990)).

The Court of Appeals for the Fifth Circuit has held that, "[t]ypically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed." *Riazco*, 91 F.3d at 754 (quoting *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir.1993)). The Fifth Circuit has further held that "where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search." *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir.2011) (quoting *United States v. Lee*, 898 F.2d 1034, 1038 (5th Cir.1990)). Nevertheless, in both *Hernandez* and *Lee*, the borrower of the car was in possession of it at the time of the search. *Hernandez*, 647 F.3d at 219–20 (defendant had standing to challenge GPS surveillance of brother's truck while he drove it, but not placement of tracking device while it was parked on the street); *Lee*, 898 F.2d at 1038 (defendant could challenge search that occurred while he was operating truck with owner's permission); *see also United States v. Jones*, 565 U.S. 400, 410 (2012) (emphasizing that Jones "possessed the Jeep at the time the Government [] inserted

---

[3] The "factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *United States v. Gomez*, 276 F.3d 694, 697–98 (5th Cir. 2001) (quoting *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981)). No one circumstance has a decisive "talismanic" significance. *Id.*

the information-gathering device"). Therefore, passengers must continue to show a "legitimate expectation of privacy" in the area or item searched, as well as a possessory interest *at the time of the search. See e.g., Powell*, 732 F.3d at 375 (emphasis added); *United States v. Short*, 181 F.3d 620, 623 (5th Cir. 1999); *Roberson*, 6 F.3d at 1091.

Here, the Court finds that Defendant lacks standing to challenge the validity of the searches. Price testified that there is only one key available to access and operate the Mercedes Benz automobile, and that only he has access and control over said key. Although Defendant may use the vehicle as he pleases, Defendant relinquishes his possessory interest when he returns the keys to Price at the end of each use. Indeed, at the time of the search, the car was parked in Defendant's grandfather's driveway, out of Defendant's possession. Additionally, the *Haydel* factors do not tilt in Defendant's favor. Defendant did not have a strong possessory interest in "the place searched," because he did not have his own key, he is not a registered owner of the vehicle, and Price testified that Defendant was not even driving the vehicle on the day in question. Nor did Defendant have the right to exclude others from the vehicle, which Price testified that only he had the right to do.

Furthermore, although Defendant had a subjective expectation of privacy in the contents of the vehicle, the vehicle was left unlocked and parked in Price's driveway. Thus, there could be no "normal precautions to maintain his privacy," taken because Price parked his own vehicle on his own property, which protected his own privacy, not that of Defendant who was neither driving the vehicle nor was present at the time of the search.

Finally, it is undeniable that Defendant was "legitimately on the premises," in his grandfather's vehicle; however, Officer Thomas testified that he observed Defendant stepping out of the front right passenger door of the vehicle, and all occupants were told to remain inside the home during the search. *See e.g., Short*, 181 F.3d at 623 ("a passenger in an automobile generally lacks standing to challenge a search of that automobile, especially when there is no indication that the items being searched belong to the passenger."). Because Defendant lacked a possessory interest in the Mercedes Benz automobile at the time of the search, and particularly because Price had the overriding interest in privacy regarding the contents in the vehicle, the Court concludes that Defendant did not have a reasonable expectation of privacy sufficient to create standing for a Fourth Amendment challenge to the warrantless searches of the Mercedes Benz automobile.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 14)** is **DENIED**.

Baton Rouge, Louisiana, this 9th day of March, 2018.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

8